**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:25-cv-03401-DOC-E                                    Date: December 19, 2025

Title: Moises Gomez Mendez v. Pamela Bondi et al

PRESENT:   THE HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER GRANTING TEMPORARY RESTRAINING ORDER [9]**

On December 16, 2025, Petitioner Moises Gomez Mendez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"), challenging the lawfulness of his classification for detention by U.S. Immigration and Customs Enforcement ("ICE") and challenging his lack of a bond hearing. Petition (Dkt. 1). On December 18, 2025, Petitioner filed an ex parte application for a temporary restraining order ("Application"). Application ("App.") (Dkt. 9). For the reasons stated below, the Application is **GRANTED**.

**I.   Background**

   **A.   Facts**

Petitioner alleges the following:
Petitioner is a foreign national currently in federal custody at Desert View Annex in Adelanto, California—thousands of miles away from his home. App. at 3. Petitioner is charged with, inter alia, having entered the United States without admission or inspection § 1182(a)(6)(A)(i). *Id.* Petitioner has lived in the United States since September 15, 2001. *Id.* at 4. He resides in West Palm Beach, Florida. *Id.* On June 4, 2025, Petitioner was arrested after a traffic stop during which he was charged for driving without a valid driver's license. *Id.*

Prior to his detention, Petitioner was gainfully employed and diligently filed his taxes. He and his wife are business owners who run a landscaping business, incorporated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

5:25-cv-03401-DOC-E

in Florida since 2018. Petitioner has been described as a hard-working, wonderful, responsible husband and friend by his community. *Id.* Petitioner's wife suffers from a plethora of health complications and Petitioner contributes to her care both financially and emotionally. *Id.*

After being detained, Petitioner requested a bond hearing before an immigration judge. *Id.* However, an immigration judge has been unable to consider Petitioner's request. *Id.* Petitioner has been detained for almost six months. *Id.*

**B.     Procedural History**

Petitioner filed his Petition (Dkt. 1) on December 16, 2025. Petitioner filed his Application (Dkt. 9) on December 18, 2025.

**II.     Legal Standard**

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co*., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

**III.     Discussion**

    **A.     Petitioner has established a likelihood of success on the merits.**

The first Winter factor, "the most important factor" in assessing whether injunctive relief should be granted. *Env't Prot. Info. Ctr. v. Carlson,* 968 F.3d 985, 989

(9th Cir. 2020). Here, the Court finds Petitioner has established a likelihood of success on the merits.

First, the Court must first determine whether Petitioner's detention is governed by § 1225(b)(2)(A) and therefore subject to mandatory detention, or if Petitioner falls under § 1226(a) and is subject to detention on a discretionary basis. Petitioner argues his detention is governed by § 1226(a), and he is unlawfully subject to mandatory detention, without a bond hearing under § 1225(b)(2). App. at 3.

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." § 1225(b)(2)(A). Except for a limited exception not applicable here, detention under § 1225 is mandatory. *Jennings*, 583 U.S. at 297. Additionally, under § 1255, individuals are not entitled to a bond hearing. *Id.* ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

As the Supreme Court explained, while "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under § 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under § 1226(a) and (c)." *Id.* at 288–89 (emphasis added); see also *id.* at 288 (explaining that, "once inside the United States . . . an alien present in the country may still be removed" under "Section 1226") (emphasis added). Section 1226(a) provides that, pursuant to a warrant issued by the Attorney General, a noncitizen who is "arrested and detained pending a decision on whether the alien is to be removed from the United States" may be detained or released on bond. Accordingly, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); see also *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker.").

Like many of our sister courts in the District and across the country,[1] the Court finds that based upon the statutory context, scheme, and text of § 1225, an individual is not

---

[1] See *Santiago Flores v. Noem*, Case No. 5:25-cv-2490-AB-AJR (C.D. Cal. Sept. 29, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304-CAS-BFM, 025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5–9 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4–9 (D. Mass. July 24, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**<u>CIVIL MINUTES – GENERAL</u>**

5:25-cv-03401-DOC-E

"seeking admission" or an "applicant for admission" when the noncitizen never attempted to do so.

Additionally, the Board of Immigration Appeals' (BIA) reading of § 1225(b) renders superfluous the Laken Riley Act, amendments to § 1226(c), which added in part, subsection 1226(c)(1)(E). *Yajure Hurtado*, 29 I&N Dec. at 222. The amendments applied mandatory detention to noncitizens who are (1) inadmissible because they are present without admission or parole, procured admission into the United States because of misrepresentation, or lacked proper documentation; and (2) have been charged with, convicted of, or arrested for certain enumerated crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (emphasis added). As noted by other courts, "'If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2).'" *Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (quoting *Maldonado v. Olsen*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025)). If "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." *Id.* For these reasons, the Court declines to adopt the reasoning in *Matter of Yajure Hurtado*.

As acknowledged in *Jennings*, § 1226 applies to "certain aliens already in the country," as opposed to § 1225(b), which "applies primarily to aliens seeking entry into the United States[.]" 583 U.S. at 281, 297. Here, Petitioner was residing in the United States at the time of his arrest. Based on the record before the Court and the plain text of the statute, Petitioner is not "seeking admission" or an "applicant for admission" under § 1225. Thus, the Court concludes § 1225(b) does not apply to people like Petitioner who are "already in this country," *Jennings*, 583 U.S. at 289, and thus Petitioner may only be subject to detention as a matter of discretion under § 1226(a).

---

2690565, at *5 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *7–9 (E.D. Mich. Sept. 9, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025), report and recommendation adopted sub nom. *Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

5:25-cv-03401-DOC-E

**B. Petitioner's Procedural Due Process rights were violated.**

Since Petitioner's detention is discretionary and not mandatory, the Court next addresses whether detention without a bond hearing violates Petitioner's due process rights.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted)).

The Ninth Circuit has applied the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to due process challenges to removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); see also *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Whether administrative procedures are sufficient under the Fifth Amendment requires consideration of: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews*, 424 U.S. at 335. Applying the *Mathews v. Eldridge* balancing test, the Court concludes that Petitioner's detention without a bond hearing violates due process.

Petitioner has a significant private interest in not being detained without due process of law. A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner is requesting that DHS adhere to existing procedures and hold individualized bond hearings, as he is entitled to under § 1226(a). At a minimum, § 1226(a) requires a valid exercise of DHS's discretion in making a detention determination. See 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Here, there is no indication that DHS exercised any discretion in detaining

Petitioner. Indeed, under § 1226(a), DHS has wide latitude in exercising its discretion regarding detention, which is not subject to second-guessing by this Court. The problem is that Respondents have not offered an explanation for Petitioner's detention. Accordingly, Petitioner has established that he has a private interest in his liberty in advocating for a bond hearing pursuant to § 1226(a), of which he has been completely deprived.

With respect to the second factor, the Court concludes the risk of erroneous deprivation is high. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 690). Petitioner has not received a bond hearing. So there has been no opportunity to determine whether there is a valid basis for Petitioner's detention. See *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025). Therefore, the risk of erroneous deprivation of liberty is high.

Detention under § 1226(a) advances legitimate government purposes such as "ensuring the appearance of aliens at future immigration proceedings" and preventing danger to the community." *Zadvydas*, 533 U.S. at 690. However, the government has not argued that Petitioner is a flight risk or danger to the community. Further, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Doe v. Becerra*, 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). So, the burden of affording Petitioner a bond hearing does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Therefore, the Court finds that Petitioner has a liberty interest. Further, the Court finds that due process requires Petitioner to receive a hearing regarding whether detention is warranted. Petitioner has established a likelihood of success on the merits.

### C. Without injunctive relief, Petitioner will likely suffer irreparable harm.

Petitioner has demonstrated a likelihood of irreparable harm absent injunctive relief. Respondents assert that Petitioner is subject to mandatory detention under § 1225(b)(2), a provision that does not apply to Petitioner, nor provides a review of their detention. Respondents' application of § 1225 to Petitioner raises constitutional concerns "that irreparable harm is likely, not just possible" in the absence of . . . injunctive relief." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Accordingly, the Court finds

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

5:25-cv-03401-DOC-E

Petitioner has clearly shown risk of irreparable harm. See *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); see also *Rodriguez*, 715 F.3d at 1144–45 (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

Petitioner has been held for months without a bond hearing thousands of miles away from his community and ailing wife. He has a family who depends on him and a business his community values. It is clear that Petitioner faces irreparable harm with further detention without a bond hearing.

### D. The balance of hardships and public interest is in Petitioner's favor.

The last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Respondents argue they have a "compelling interest in the steady enforcement of its immigration laws." Opp. 13. Nonetheless, the Court finds that the balance of equities and public interest factors favors Petitioner. Given that injunctive relief is only the bare minimum required under § 1226, the Court finds the harm to Respondents is minimal. See *Rodriguez*, 715 F.3d at 1145 (finding the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights, . . . because all citizens have a stake in upholding the Constitution." *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation modified). For these reasons, the Court concludes that the balance of hardships and public interest tips sharply in favor of Petitioner.

### IV. Disposition

Based on Petitioner's showing of likelihood of success on the merits and irreparable harm, the minimal harm to Respondents, and the public's interest in upholding the Constitution, the Court **GRANTS** Petitioner's Application.

Respondents are **ENJOINED** from:

1. detaining Petitioner unless he is provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order; and
2. transferring, relocating, or removing Petitioner from the Central District of California without further order of the Court and pending final resolution of this litigation unless Petitioner requests transfer of this case.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

5:25-cv-03401-DOC-E

The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue. Respondents shall file any response by **December 27, 2025**, and Petitioner shall file a response no later than **January 2, 2026**.

The Court SETS a hearing in person on whether a preliminary injunction should issue on **January 5, 2026**, at 9:00 a.m. All parties are required to attend the hearing in person, and U.S. Immigration and Customs Enforcement is **DIRECTED TO TRANSPORT** Petitioner to the courtroom and ensure their presence at the hearing.

The Court hereby **GRANTS** Application of Non-Resident Attorney Jan Peter Weiss to Appear Pro Hac Vice on behalf of Petitioner Moises Gomez Mendez [10].

Initials of Deputy Clerk: kdu